**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) No. 16-cr-30068-SEM-TSH |
| | ) |
| **KEITH JD OFFORD,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER AND OPINION

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

Defendant Keith Offord is charged with bank fraud, access device fraud, and aggravated identity theft.  Defendant has filed a Motion to Suppress (d/e 14) evidence obtained during a traffic stop that Defendant argues was improperly prolonged.  As the Court ruled on June 27, 2017, during the evidentiary hearing on the Motion to Suppress, the motion is DENIED.

## I. BACKGROUND

Shortly before midnight on August 20, 2015, Illinois State Trooper Christopher Parmley stopped Defendant Keith Offord and Defendant's passenger, Constance Howay, for speeding on Interstate 55.  From his post along the interstate, just outside of

Bloomington, Illinois, Trooper Parmley clocked Defendant's vehicle as traveling 84 miles per hour, 14 miles per hour above the posted speed limit of 70.  Trooper Parmley turned on his light bar, which activated a dash video camera that recorded the encounter.[1]  He began to pull Defendant over to the side of the road at minute 1:05.  The vehicles come to a stop at 1:19.

At approximately minute 1:30 of the recording, Trooper Parmley approached the vehicle.  Trooper Parmley informed Defendant of his speed then asked whether Defendant owned the vehicle.  (1:43).  In reaction to Defendant's inaudible response, Trooper Parmley requested to see the rental agreement.  (1:48).  Trooper Parmley inquired where Defendant and Ms. Howay were coming from.  (1:53).  In response to Defendant's answer, Trooper Parmley asked how long the passengers were in St. Louis.  Defendant stated they were "in and out."  (2:07).

Trooper Parmley looked into the back seat of the vehicle with his flashlight.  He noticed a large amount of clothing and several boxed iPhones in the back seat of the vehicle and he asked whether

---

[1] The Court will reference approximate times noted on the running clock of the dash video camera "dashcam."  Each timestamp reference refers to the minutes and seconds after the camera began recording.

any other passengers were in the car. (2:15). He asked whether the two were shopping on their trip.

Trooper Parmley requested identification from both Defendant and Ms. Howay. Defendant provided his Illinois driver's license and stated that Ms. Howay did not have identification to provide. (2:36). Trooper Parmley then requested that Ms. Howay follow him to his squad car. (2:40).

Trooper Parmley and Ms. Howay sat down in the squad car (2:59). Trooper Parmley then entered Ms. Howay's name, date of birth, and state of her identification into the LEADS check on his computer. (3:17). Trooper Parmley asked Ms. Howay where the two were coming from and how long they had been there, to which Ms. Howay responded they had been in St. Louis for four days. (3:42).

Trooper Parmley asked if she had ever been arrested, and she replied, "A long time ago." (3:59). He then stated that Ms. Howay had an outstanding warrant for her arrest for "dangerous drugs." (4:08). He asked her if anything like drugs were in the car or whether Keith had any such thing. (4:20).

Trooper Parmley inquired as to the details of Ms. Howay's relationship with Defendant. In response to his questions, she

stated that Defendant was a friend whom she had known for three years and that she and Defendant stayed in a hotel in St. Louis in separate rooms.  (4:40).

During the conversation, Trooper Parmley had entered Defendant's information into the LEADS database check and learned by minute 4:52 that Defendant had been arrested for a weapon offense and had been previously convicted for "fraud/theft." Government's Response to Motion to Suppress at 3 (d/e 18) (hereinafter Response).  Trooper Parmley told Ms. Howay that he was going to call for a canine unit at 4:58.  He then told her that he did not know what the bond would be on her arrest.  (5:06).

Trooper Parmley told Ms. Howay that the arrest warrant was issued in Cicero on July 28, 2015, and Ms. Howay said that she had been arrested around July 4.  (5:17).  He said the warrant was for possession of a controlled substance or paraphernalia.  (5:55) and that she had failed to appear (6:53).  She stated that she paid the required fine and that the warrant should not be pending. (6:54).

Trooper Parmley called on the radio for a canine unit.  (5:34). He then radioed Ms. Howay's identifying information to his

dispatch. (7:02). The dispatcher stated on the radio that the warrant was a failure-to-appear arrest warrant for dangerous drugs and that Ms. Howay was "Wanted, Armed, and Dangerous." (8:07). Dispatch then confirmed that Trooper Parmley's current location was within the geographic limit of the warrant and broadcast an alert tone to all officers in the area to provide backup. (8:32).

Trooper Parmley and Ms. Howay stepped out of the squad car (8:55), he placed her in hand cuffs (9:06), and he patted her down (9:20). Trooper Parmley then placed Ms. Howay in the squad car. (9:56).

Trooper Parmley then exited the squad car and approached Defendant in his vehicle. (10:04). Trooper Parmley told Defendant that Ms. Howay had a warrant out for her arrest for a controlled substance or paraphernalia. (10:16). Trooper Parmley told Defendant to "[j]ust hang out for us…." (10:42) and to wait until Trooper Parmley knew the bond information (10:46). He asked if Ms. Howay had any luggage in the vehicle, to which Defendant stated she did. (10:51). Trooper Parmley then repeated his direction for Defendant to "hang out." (10:52).

Trooper Jefferson arrived as backup. Trooper Parmley spoke to him about the situation behind the squad car (11:06). At 11:55, Trooper Parmley returned to his squad car and told Ms. Howay that he had informed Defendant of her arrest. At minute 12:08, dispatch announced on the radio that the canine was on scene.[2] At the hearing, Trooper Parmley testified that the metallic sound heard on the video at minute 12:25 was created by his ticket book hitting the buttons on his uniform and that the click sound was his pen to write out Defendant's ticket. Trooper Parmley asked Ms. Howay if she had any luggage in the vehicle. (12:50). Trooper Parmley then told Trooper Jefferson to place Defendant in Trooper Jefferson's squad car and to tell Defendant to roll up the windows so that the dog could walk around the vehicle for the sniff test. (12:32).

At 12:54, Trooper Jefferson is seen talking to Defendant in his vehicle. Defendant exits the vehicle at 13:08. While Defendant was standing outside of the vehicle waiting for the canine to conduct the sniff test, Trooper Parmley asked Defendant if he still lived at the

---

[2] At the hearing, Trooper Parmley testified that the "23023" announcement heard on dispatch at this time signified that the dog was on scene, "230" being shorthand for a canine unit and "23" meaning "on scene."

address on his driver's license for the purpose of including the correct address on the ticket. (13:16).

Trooper Parmley is then heard summarizing the stop's circumstances, presumably to the canine's handler. (13:31). The canine approached the vehicle to begin the sniff test at 14:04 and indicated at 14:18 to the presence of drugs.

A search of the vehicle revealed "heroin evidence" in Ms. Howay's purse and evidence of identity fraud in the form of $30,000 worth of new clothes, iPhones, watches, and gift cards and receipts with customer names different from Defendant's and Ms. Howay's. Response at 4; Special Agent Rossiter testimony.

## II. LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is considered a "seizure" for Fourth Amendment purposes. United States v. Whren, 517 U.S. 806, 809-810 (1996). Police may conduct a traffic stop if they have probable cause to believe the driver committed a traffic violation. Id. at 810.

"The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission,'" namely, to address the traffic violation that warranted the stop. Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015). A stop justified only by the need to issue a traffic ticket "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). But so long as the duration of the stop is not measurably extended, an officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure." Arizona v. Johnson, 129 S. Ct. 781, 788 (2009). For example, an officer may walk a drug-detection dog around a car's exterior, see Caballes, 543 U.S. at 410, but she may not do so in such a way as to prolong the stop, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 135 S. Ct. at 1615.

Reasonable suspicion evades a precise definition. A fluid concept, it requires "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United

States v. Johnson, 383 F.3d 538, 542 (7th Cir. 2004) (citations omitted).  The Supreme Court has described reasonable suspicion as a "commonsense, nontechnical conception[] that deals with 'the factual and practical considerations of everyday life on which reasonable prudent men, not legal technicians, act.'"  Ornelas v. United States, 517 U.S. 690, 695 (1996) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)).  Information lawfully obtained by an officer while investigating a traffic offense may support reasonable suspicion.  Martin, 422 F.3d at 602.

The test for reasonable suspicion in the Seventh Circuit is wholly objective.  See United States v. Barnett, 505 F.3d 637, 639 (7th Cir. 2007); United States v. Brown, 188 F.3d 860, 866 (7th Cir. 1999).  The fact that an officer "does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."  Scott v. United States, 436 U.S. 128, 138 (1978); see also Barnett, 505 F.3d at 639 (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004)) (noting that the "Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain

circumstances, <u>whatever</u> the subjective intent, [as] evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer").

### III. ANALYSIS

Defendant argues that Trooper Parmley unlawfully prolonged his stop of Defendant for a traffic infraction and detained Defendant for the purpose of conducting a drug sniff test without reasonable suspicion that Defendant engaged in drug-related criminal activity. Therefore, Defendant argues, the fruits of the subsequent search must be suppressed. The Court finds that the traffic stop at issue was not unreasonably prolonged.

A. <u>Trooper Parmley had reasonable suspicion of drug-related activity before Ms. Howay exited the stopped vehicle.</u>

The Court finds that Trooper Parmley had reasonable suspicion of drug-related criminal activity by both Defendant and Ms. Howay by minute 2:40, before Ms. Howay exited the stopped vehicle. Reasonable suspicion manifested by this time by: the travel in a rental car, late at night, on a known drug-trafficking highway; Ms. Howay's lack of identification; Ms. Howay's strange behavior;

the apparent significant age difference between the two; and the large volume of merchandise in the back seat. Although alone each factor may not warrant investigation, taken together this particular set of circumstances amounted to reasonable suspicion. See United States v. Sokolow, 490 U.S. 1, 9 (1989); United States v. Teslim, 869 F.2d 316, 322 (7th Cir. 1989).

Defendant was driving a rental car just before midnight on I-55 when Trooper Parmley pulled him over. Further, Highway I-55 is a highway known to be frequently used to traffic drugs. See United States v. Sanford, 806 F.3d 954, 955 (7th Cir. 2015) (use of a rental car on I-55 at late hours supported reasonable suspicion because "[i]nterstate 55 . . . is part of the network of north-south and west-east highways used by drug dealers to deliver their illegal drugs to the Windy City.").

Second, while lack of identification generally may be unusual but not suspicious, Ms. Howay's lack of identification was particularly suspicious because Trooper Parmley knew prior to returning to his squad car that she had crossed state lines on this trip.

Third, Trooper Parmley testified that when he first encountered Defendant and Ms. Howay, he believed the age difference between them to be 15 to 20 years, which he found to be suspicious. Trooper Parmley also testified that he found Ms. Howay's behavior to be strange, though this is not a strong factor. See United States v. Stepp, 680 F.3d 651, 665 (6th Cir. 2012).

Finally, upon approaching Defendant's vehicle at the beginning of the encounter, the trooper glimpsed what he described as an unusual amount of merchandise in the backseat. Trooper Parmley testified that he saw such a large volume of merchandise in the vehicle that he asked if there were any other passengers in the vehicle because a person could have been concealed within the pile.

These facts support reasonable suspicion before Ms. Howay exited the stopped vehicle and she and Trooper Parmley went to the squad car. Indeed, Defendant's assertion regarding Trooper Parmley's intent in removing Ms. Howay from the vehicle to determine if Ms. Howay's story about the trip differed from Defendant's—that Trooper Parmley was investigating the trip rather than completing the speeding citation or effectuating the warrant— indicates that Trooper Parmley was already suspicious about the

trip and both Defendant's and Ms. Howay's accounts of it at minute 2:44.

      B.  <u>Even if the events prior to Ms. Howay's exit of the vehicle did not create reasonable suspicion, Trooper Parmley had reasonable suspicion when he learned of the outstanding warrant for Ms. Howay's arrest.</u>

Even if the facts that occurred prior to Trooper Parmley's request that Ms. Howay exit the vehicle did not amount to reasonable suspicion of drug-related activity, reasonable suspicion certainly existed as to Ms. Howay when Trooper Parmley learned of the outstanding warrant for her arrest related to dangerous drugs. Given that Ms. Howay had been traveling in the vehicle with Defendant, the warrant also supported reasonable suspicion that evidence of drug-related criminal activity would be found in the vehicle.  Finally, by the time Trooper Parmley learned about the warrant, Trooper Parmley had learned that Defendant and Ms. Howay were traveling in a rental car along a known drug highway late at night, that Ms. Howay was acting bizarrely, and that there was an apparently significant age difference between the two. These facts indicated a suspicious relationship between Ms. Howay and Defendant that gave rise to reasonable suspicion of drug-

related activity by Defendant. Therefore, Trooper Parmley had the requisite reasonable suspicion of drug-related criminal activity to detain Defendant and quell his rising suspicions upon learning of the existence of Ms. Howay's outstanding warrant.

At the hearing on this motion, Trooper Parmley stated that at the time of Ms. Howay's arrest, he had no suspicions of potential criminal activity by Defendant other than that Defendant had exceeded the speed limit. This is of no matter. Trooper Parmley's statements regarding his subjective beliefs do not undercut the Government's position that reasonable suspicion justified Defendant's detainment because the test for reasonable suspicion is entirely objective. Barnett, 505 F.3d at 639.

The Court notes that other facts highlighted by the Government do not support reasonable suspicion. Although the Government argues that the "Armed and Dangerous" designation on Ms. Howay's arrest warrant notifies officers that higher caution is needed, the Government has not established how the designation is attached to a warrant or who makes that determination. Without more facts about the nature of the warrant for failure-to-appear for

dangerous drugs, the Court does not consider the "Armed and Dangerous" designation to contribute to reasonable suspicion.

Nor do the alleged inconsistencies in Ms. Howay's statements and Defendant's statements support reasonable suspicion. First, Ms. Howay's statements about her prior arrest and her statement that she and Defendant were in St. Louis for four days took place after Trooper Parmley learned about the warrant and therefore they occurred after reasonable suspicion had already been established. See Section III.A, above. The Court also notes that it finds no suspicious inconsistencies in the statements relied on by the Government. Ms. Howay's statement that she was arrested "[a] long time ago" does not generate suspicion. The Government argues that this statement conflicts with Ms. Howay's later statement that she was arrested around July 4, 2015, which was approximately a month and a half prior to the night at issue. The phrase "a long time ago" is broad and unspecific and can be reconciled with an arrest that took place a month and a half earlier. The Court similarly finds that Defendant's and Ms. Howay's statements about the length of their trip were not suspiciously contradictory.

Defendant's statement that they were "in and out" can incorporate a four-day trip.

C.  Trooper Parmley's authorized time period to seize Defendant for the purposes of the traffic stop continued at least until Trooper Parmley learned of the outstanding warrant.

Defendant asserts that his seizure began at minute 1:05, when Trooper Parmley turned on his flashing light bar to pull Defendant over, and continued until after the drug sniff test. Defendant contends that Trooper Parmley prolonged his detainment by taking and keeping Defendant's driver's license and by commanding Defendant to "[j]ust hang out."

Defendant's detainment began as a lawful stop for traveling fourteen miles per hour above the posted speed limit. Under Rodriguez, without reasonable suspicion as to some other criminal activity, the officer's authority for a traffic stop ceases when the officer reasonably should have completed the investigation and citation of the traffic infraction. Rodriguez, 135 S. Ct. at 1614.

Trooper Parmley's approach of the vehicle, his questions regarding where Defendant and Ms. Howay were coming from and how long they had been there, and his request for each occupant's

identification were all tasks related to the reasonable completion of a speed infraction stop. <u>Stepp</u>, 680 F.3d at 662.

Trooper Parmley's criminal history checks of Ms. Howay and Defendant were also justified as reasonable officer actions during a traffic stop. <u>Sanford</u>, 806 F.3d at 956 (entering vehicle occupant's information into squad car computer for purpose of running criminal history check was an act "permissible even without reasonable suspicion"); <u>see also</u> <u>United States v. Rice</u>, 483 F.3d 1079 (10th Cir. 2007); <u>United States v. Fernandez</u>, 600 F.3d 56 (1st Cir. 2010).

The fact that Trooper Parmley had Ms. Howay accompany him back to his squad car after the initial conversation at Defendant's driver-side window did not terminate the time period of the authorized traffic stop. Defendant argues that Trooper Parmley's testimony that he asked Ms. Howay to follow him to the squad car because he wanted to determine if her story about the trip would be consistent with Defendant's, rather than for the purpose of investigating the traffic violation or completing the citation, indicates that Trooper Parmley was no longer conducting the traffic stop at that time. However, an officer can take actions unrelated to

completion of the traffic stop if those actions do not prolong the seizure. <u>Arizona</u>, 129 S. Ct. at 788. Here, Trooper Parmley and Ms. Howay walked to the squad car and sat down inside, then Trooper Parmley immediately asked Ms. Howay for her name, date of birth, and state of residence, which he simultaneously entered into the LEADS database on his computer and immediately following radioed to dispatch. Ms. Howay's accompaniment of Trooper Parmley in the squad car when he ran her criminal history background did not prolong the stop beyond the time authorized for the traffic citation.

Even if, as Defendant argues, Trooper Parmley's request that Ms. Howay accompany him to the squad car was not a task reasonably related to the traffic infraction and accordingly marked the end of the time period of Trooper Parmley's authority to detain Defendant for the traffic stop, Trooper Parmley had reasonable suspicion of drug-related activity by Defendant and Ms. Howay before Trooper Parmley asked Ms. Howay to step out of the vehicle, as discussed above. See Section III.A.

D. <u>Trooper Parmley's reasonable suspicion justified his actions and Defendant's detention after Trooper Parmley learned of the outstanding warrant.</u>

In support of his argument for suppression, Defendant highlights that Trooper Parmley did not take any action toward issuing a traffic citation to Defendant from the period after Trooper Parmley confirmed that Defendant's driver's license was valid (4:49) until Trooper Parmley began to write out Defendant's ticket. (12:25). Defendant complains that Trooper Parmley's questions to Ms. Howay are about the trip and the date of her prior arrest rather than about the speeding violation, Defendant's identifying information necessary for the ticket, or the geographical limit of the warrant. But all of Trooper Parmley's questions to Ms. Howay took place after reasonable suspicion already existed.

Defendant argues that his detention was unlawfully prolonged because Trooper Parmley took no action to complete the traffic citation until minute 12:25, after Trooper Parmley arrested Ms. Howay and after Trooper Jefferson arrived on scene. Defendant argues that Trooper Parmley unreasonably continued to detain Defendant after Ms. Howay was in custody and the need to prevent her from fleeing and to protect Trooper Parmley's safety no longer

existed.  Rather, Defendant asserts that Trooper Parmley continued to detain Defendant to allow the dog to conduct the sniff test.

Defendant also emphasizes that Trooper Parmley told Ms. Howay that he was going to call for a canine unit at minute 5:00 and that Trooper Parmley talked to Ms. Howay about the bond for her arrest at minute 5:08.  Defendant argues Trooper Parmley had already decided to arrest Ms. Howay at minute 5:08.  Regardless of whether that assertion is true, Trooper Parmley's clear and justified suspicion of Ms. Howay early in the encounter does not preclude Trooper Parmley's suspicion of Defendant.  Clearly, Trooper Parmley could be reasonably suspicious of both Defendant and Ms. Howay; and, indeed, the suspicion as to Ms. Howay contributed to the suspicion of Defendant.

Defendant argues that Trooper Parmley's statement to "[j]ust hang out for us" after telling Defendant about Ms. Howay's arrest indicates that Trooper Parmley continued to detain Defendant for the purpose of completing the dog sniff test.  But this delay was reasonable because Trooper Parmley already had reasonable suspicion of criminal activity by Defendant beyond the traffic violation before Trooper Parmley told Defendant about Ms. Howay's

arrest. Additionally, Trooper Parmley telling Defendant of Ms. Howay's arrest does not affect reasonable suspicion as to Defendant nor does it indicate that Trooper Parmley delayed completion of the ticket for the purpose of completing Ms. Howay's arrest or investigating criminal activity by Ms. Howay.

Similarly inapposite is Defendant's emphasis that Trooper Parmley did not work on the ticket while waiting for dispatch to confirm the validity of the warrant, did not tell Trooper Jefferson anything about the speeding violation or the geographic limit of Ms. Howay's warrant, and sent Trooper Jefferson to remove Defendant from the vehicle for the sniff test and not to confirm Defendant's address. Because Trooper Parmley had reasonable suspicion of Defendant before Trooper Jefferson arrived and even before Trooper Parmley started to question Ms. Howay in the squad car, Trooper Parmley was not required to prioritize the speeding violation over the investigation of the trip and the vehicle.

It is also of no help to defendant that, once Trooper Parmley confirmed Defendant's address at minute 13:16, Trooper Parmley was able to complete the ticket but unjustifiably spoke with an on-scene officer until minute 14:00 before completing the ticket.

Although these facts did delay the completion of Defendant's speeding ticket, that delay was justified by Trooper Parmley's reasonable suspicion of Defendant.

In a recent opinion, the Seventh Circuit held that even "if there was evidence that the officers had improperly delayed issuing [the defendant's] citation …. reasonable suspicion would justify the police in detaining the driver beyond completion of the traffic infraction." United States v. Guidry, 817 F.3d 997, 1005 (7th Cir. 2016. The Circuit Court concluded that that the arresting officer "had reasonable suspicion of criminal activity at that point and so was justified in prolonging the stop for a reasonable time to confirm or dispel, with the dog's assistance, his mounting suspicions." Id. at 1005 (quoting Sanford, 806 F.3d at 959). Tellingly, the court also made note of its previous finding that reasonable suspicion justified prolonging a traffic stop by eight minutes to wait for a drug-detection dog to arrive. Id. at 1005 (citing Sanford, 806 F.3d at 959).

The Court also finds that, having had reasonable suspicion, Trooper Parmley did not detain Defendant for an unreasonable length of time. A detainment period of approximately nine minutes,

that is, the time that elapsed between the conclusion of the background checks and the signaling of the drug-detection dog, is not unreasonable to quell or confirm reasonable suspicion of criminal activity.  Cf. Sanford, 806 F.3d at 959; United States v. Martin, 422 F.3d 597 (7th Cir. 2005) (detainment period, from initial stop to the signal of drug-detection dog, of 50 minutes held permissible when officer had reasonable suspicion).

Notably, during much of that time Trooper Parmley was occupied attending to the arrest of Ms. Howay—a circumstance the trooper could hardly ignore.  Defendant, drawing a parallel to United States v. Stepp, gingerly hints that the trooper acted in the spirit of a "crafty officer" by purposefully drawing out the issuance of a ticket in order to step around the holding in Rodriguez.  680 F.3d 651, 662 (6th Cir. 2012) (officer's extraneous questioning of vehicle owner unreasonably prolonged traffic stop beyond its original purposes).  The Court finds this allegation unwarranted. Trooper Parmley was reasonably efficient in his investigation: the trooper's entire investigation, from the flashing of his light bar to the indication of the dog, lasted a little more than fourteen minutes. In that time, the trooper ran background checks, verified Ms.

Howay's warrant, called for backup, placed Ms. Howay into custody, began writing up Defendant's traffic ticket, and conferred with officers who arrived on the scene. His diligent actions hardly warrant reproval.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to suppress (d/e 14) is DENIED.

ENTERED: February 2, 2018


FOR THE COURT:                    *s/ Sue E. Myerscough*
                                  SUE E. MYERSCOUGH
                                  UNITED STATES DISTRICT JUDGE