IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cr-30068 |
| ) | |
| KEITH JD OFFORD, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Keith JD Offord's amended Motion for Compassionate Release (d/e 115) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

On February 8, 2018, a jury found Defendant guilty of one count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2 and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.  Minute Entry, Feb. 8, 2018; Indictment, d/e 1.  On October 19, 2018, the undersigned District Judge sentenced Defendant to a total of 144 month's imprisonment, consisting of 120 months'

imprisonment on the bank fraud count, and 24 months' imprisonment on each of the aggravated identity theft counts to be served consecutively to the sentence imposed on the bank fraud count and concurrently with each other.  Minute Entry October 19, 2018.  The Court also imposed a 5 year term of supervised release consisting of 5 years of supervised release on the bank fraud count to be served concurrently with 1 year of supervised release imposed on each of the aggravated identity theft counts.  Id.  Defendant is currently serving his sentence at FCI Elkton in Lisbon, Ohio, and has a projected release date of July 28, 2028.  Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed June 12, 2020).

On June 2, 2020, Defendant filed a pro se motion for compassionate release (d/e 112) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On June 8, 2020, Defendant filed an amended motion for compassionate release (d/e 115).  Defendant requests compassionate release due to the COVID-19 pandemic as it relates to the conditions at FCI Elkton.  Specifically, Defendant represents that he has been targeted for harassment by other inmates as the perceived source of COVID-19 at FCI Elkton, as he was sick with

flu-like symptoms when he was transferred to the facility in March of 2020. See Am. Mot. Compassionate Release 2; Pro Se Mot. Compassionate Release 3. Defendant also claims that he was assaulted by another inmate in the facility for the same reason. See Pro Se Mot. Compassionate Release 3.

Defendant is 27 years old and he concedes in his Amended Motion for Compassionate Release that he "does not suffer from any of the health conditions identified by the [Centers for Disease Control] as creating high risk from the virus." Am. Mot. Compassionate Release 2.

Defendant has not proposed a release plan if he were to be released from custody. The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 117). The Probation Office interviewed Defendant's mother and assessed her residence for suitability in the event that Defendant proposed to reside with his mother upon release. The Probation Office noted that Defendant's mother currently receives housing assistance through the State of Illinois. Id. at 2. The Probation Office advised Defendant's mother that she could lose her housing assistance if Defendant was released to her

residence and state authorities discovered Defendant residing there. Id. Defendant's mother stated that she hoped to begin new employment soon that would allow her to move into a residence without housing assistance. Id. Based on the information available, the Probation Office's Memorandum concludes that the residence cannot be approved at this time. Id. The Probation Office's Memorandum also notes that Defendant was tested for COVID-19 on May 26, 2020 and that the results of that test came back negative three days later. Id. at 1.

On June 10, 2020, the Government filed a Response in Opposition to Defendant's Motion for Compassionate Release (d/e 116). The Government argues that the Court should deny Defendant's motion because he has failed to exhaust his administrative remedies and because Defendant's concerns about COVID-19 alone are not an extraordinary and compelling reason warranting a reduction in his term of imprisonment. The Government also notes that the Bureau of Prisons (BOP) has implemented procedures designed to curb the spread of the virus in its facilities.

On June 12, 2020, the Court held a video conference hearing

on Defendant's amended motion. Defendant appeared by telephone from FCI Elkton. As of June 12, 2020, BOP reports that FCI Elkton has 436 confirmed inmate cases of COVID-19 and 7 confirmed staff member cases. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed June 12, 2020). BOP further reports that 165 inmates and 46 staff previously diagnosed with COVID-19 have recovered. Id.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now

allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a) the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison. Defendant, however, is 27 years old and does not have any health problems, let alone any underlying medical conditions that may increase the risks presented by COVID-19. See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed June 12, 2020).

The Court recognizes that there are many confirmed case of COVID-19 at FCI Elkton, the facility where Defendant is housed. According to the Government, however, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities. The Government also represents that the number of confirmed cases at FCI Elkton appears to be decreasing, as inmates

and staff who previously tested positive recover from the illness. See Resp. 1-2.

Further, Defendant has over eight years left on his sentence for bank fraud and aggravated identity theft. Defendant was convicted of a wide-ranging and fairly sophisticated scheme of bank fraud and identity theft that resulted in a loss of more than $600,000 in less than two years. Defendant was previously convicted of identity theft in state court and while on pretrial release on this case, Defendant's bond was revoked based on a new attempt to commit bank fraud where Defendant tried to purchase a luxury vehicle using falsified documents and another person's Social Security number.

Finally, Defendant has not proposed an adequate release plan. Based on Probation's Memorandum, Defendant's mother's home would not be a suitable residence for Defendant if he were to be released from custody and Defendant has not identified any alternative.

While the Court is sympathetic to Defendant's claims of harassment and assault by other inmates at FCI Elkton purportedly based on the belief that Defendant was responsible for introducing

COVID-19 into the facility, Defendant has not presented any evidence to support his claims. The Incident Report attached to Defendant's pro se motion, d/e 112, only says that Defendant and another inmate were engaged in a physical altercation and could both be seen exchanging punches. The Incident Report says nothing of the cause of the altercation. While Defendant's written statement attached to the incident report attempts to tie the altercation to the alleged harassment, there is no other evidence in the record to corroborate Defendant's account.

The Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above, Defendant Keith JD Offord's Amended Motion for Compassionate Release (d/e 115) and Defendant's pro se Motion for Compassionate Release (d/e 112) are DENIED. This ruling does not preclude Defendant from filing another motion for compassionate release in the future if

circumstances change.


ENTER:  June 13, 2020

*/s/ Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
