## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-cr-30068** |
| | ) | |
| **KEITH JD OFFORD,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Keith JD Offord's Second Amended Motion for Compassionate Release (d/e 126) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

On February 8, 2018, a jury found Defendant guilty of one count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2 and three counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.  Minute Entry, Feb. 8, 2018; Indictment, d/e 1.  On October 19, 2018, the undersigned District Judge sentenced Defendant to a

total of 144 months' imprisonment, consisting of 120 months'
imprisonment on the bank fraud count, and 24 months'
imprisonment on each of the aggravated identity theft counts to be
served consecutively to the sentence imposed on the bank fraud
count and concurrently with each other.  Minute Entry, October 19,
2018.  The Court also imposed a 5-year term of supervised release
consisting of 5 years of supervised release on the bank fraud count
to be served concurrently with 1 year of supervised release imposed
on each of the aggravated identity theft counts.  Id.  Defendant is
currently serving his sentence at FCI Elkton in Lisbon, Ohio, and
has a projected release date of July 28, 2028.  Bureau of Prisons,
Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed
September 24, 2020).

On June 2, 2020, Defendant filed a pro se motion for
compassionate release (d/e 112) pursuant to 18 U.S.C. §
3582(c)(1)(A) and on June 8, 2020, after the appointment of
counsel, Defendant filed a first amended motion for compassionate
release (d/e 115).  Defendant requested compassionate release due
to the COVID-19 pandemic as it related to the conditions at FCI
Elkton.  Specifically, Defendant represented that he had been

targeted for harassment by other inmates as the perceived source of COVID-19 at FCI Elkton, as he was sick with flu-like symptoms when he was transferred to the facility in March of 2020.  <u>See</u> First Am. Mot. Compassionate Release 2.  Defendant also claimed that he was assaulted by another inmate in the facility for the same reason. <u>See</u> First Pro Se Mot. Compassionate Release 3.

At a hearing on June 12, 2020, and in an opinion entered the following day, the Court denied Defendant's First Amended Motion for Compassionate Release.  <u>See</u> Minute Entry, June 12, 2020; Opinion, d/e 118.  The Court denied Defendant's First Amended Motion for Compassionate Release for several reasons, among them being that Defendant is 27 years old, has more than 8 years remaining on his sentence, and suffers from no health problems recognized by the Centers for Disease Control and Prevention (CDC) as increasing the risk from COVID-19.  Opinion 7-9.  In the Opinion denying the motion, the Court stated that the decision did not foreclose Defendant from filing another motion for compassionate release in the future if circumstances change.  <u>Id.</u> at 10.

On August 21, 2020, Defendant filed a second pro se Motion for Compassionate Release alleging a change in circumstances.

Second Pro Se Mot. Compassionate Release, d/e 125.  Specifically, in the second pro se motion, Defendant claims that he has suffered from chest pain and that he "passed out" in the recreation yard.  Id. at 2.  After the reappointment of counsel, Defendant filed the Second Amended Motion for Compassionate Release now before the Court.  In the Second Amended Motion, Defendant's appointed counsel notes that Defendant's circumstances appeared to have remained unchanged, but also that counsel had at that time not been able to obtain Defendant's most recent medical records. Second Am. Mot. Compassionate Release 2-3.  Defendant's appointed counsel further represented that if new medical records, when obtained, showed the Defendant was at risk based on a new health condition, counsel would supplement the motion accordingly.  Id. at 3.  In the alternative, appointed counsel stated that if the new medical records did not demonstrate a sufficient change in circumstances, appointed counsel would move to withdraw.  Id.

On September 3, 2020, the Government filed a Second Response in Opposition to Defendant's Motion for Compassionate Release (d/e 132) arguing that the Court should deny Defendant's

second motion because Defendant has not established that extraordinary and compelling circumstances warrant a reduction in Defendant's sentence.  On the same day, Defendant's appointed counsel filed a Motion to Withdraw as Counsel and Motion for Leave to File Document Under Seal (d/e 129)  In the Motion to Withdraw, Defendant's appointed counsel seeks leave to withdraw as counsel because there has been no material change in Defendant's circumstances since Defendant's First Amended Motion for Compassionate Release was denied.  Id. at 1.  In conjunction with the Motion to Withdraw, appointed counsel also filed Defendant's most recent medical records from the Bureau of Prisons (BOP) (d/e 130).

Defendant is 27 years old and as he conceded in his First Amended Motion for Compassionate Release, he "does not suffer from any of the health conditions identified by the CDC as creating high risk from the [corona]virus."  First Am. Mot. Compassionate Release 2.  In the Second Pro Se Motion for Compassionate Release, though, Defendant claims that he passed out in the recreation yard and he complains of "chest pain" and unspecified "respiratory issues."  Second Pro Se Mot. Compassionate Release 2-3.

The United States Probation Office addressed Defendant's request for compassionate release in a Memorandum (d/e 128).  At the time of Defendant's First Amended Motion for Compassionate Release, Defendant proposed living with his mother at her home in East Dundee, Illinois.  Defendant's proposed release plan set forth in the Second Pro Se Motion is the same.  The Probation Office interviewed Defendant's mother and assessed her residence for suitability.  The Probation Office noted that Defendant's mother currently receives housing assistance through the State of Illinois. Id. at 2.  The Probation Office advised Defendant's mother that she could lose her housing assistance if Defendant was released to her residence and state authorities discovered Defendant residing there. Id.  At the time of Defendant's first motion, Defendant's mother stated that she hoped to begin new employment soon that would allow her to move into a residence without housing assistance.  Id.

The Probation Office conducted a second investigation based on Defendant's second motion and found that Defendant's mother had not obtained new employment as she had hoped, but that she still wished Defendant would be released to her residence.  Based on the information available, the Probation Office's Memorandum

concludes that the residence cannot be approved at this time.  Id. at 3.

As of September 24, 2020, BOP reports that FCI Elkton has one active confirmed inmate case of COVID-19 and two active confirmed staff member cases.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed September 24, 2020).  At the time Defendant filed his First Amended Motion for Compassionate Release, BOP reported 436 active confirmed inmate cases of COVID-19 and seven active confirmed staff member cases at FCI Elkton.  Opinion 5.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the

Court could grant a defendant compassionate release only if the
Director of the BOP filed a motion seeking that relief.  With the
enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now
allows an inmate to file with the Court a motion for compassionate
release, but only after exhausting administrative review of a BOP
denial of the inmate's request for BOP to file a motion or waiting
thirty days from when the inmate made his or her request,
whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion
> on the defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the defendant's
> facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in
> section 3553(a) to the extent that they are applicable, if it
> finds that—
>
> (i) extraordinary and compelling reasons warrant such a
> reduction . . . and that such a reduction is consistent with
> applicable policy statements issued by the Sentencing
> Commission.

18 U.S.C. § 3582(c)(1)(A).

Having considered the relevant factors set forth in 18 U.S.C. §

3553(a) the Court concludes that Defendant has not established that extraordinary and compelling reasons warrant a reduction in his term of imprisonment.

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the CDC and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.  Defendant, however, is 27 years old and has not been diagnosed with any underlying medical condition that may increase the risks presented by COVID-19.  See Coronavirus Disease 2019 (COVID-19), People at Increased Risk, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last accessed September 24, 2020).

While Defendant's Second Pro Se Motion for Compassionate Release claims that Defendant "passed out in the recreation yard," that Defendant has suffered from chest pain, unspecified "respiratory issues," shortness of breath, and loss of smell and taste—which may be potential COVID-19 symptoms—Defendant's

BOP medical records do not demonstrate that there has been a material change in Defendant's health.  Appointed counsel's Motion to Withdraw states that "[a]s [Defendant] has not been diagnosed with any new health condition, there has been no material change in circumstances since [Defendant's] initial motion for compassionate release was denied."  Mot. to Withdraw 1.  The Motion to Withdraw notes that Defendant's most recent blood work revealed one possible abnormality—specifically, low levels of neutrophils—but that levels can vary from day to day and one abnormal blood test is not confirmation of the condition known as neutropenia.  Id. at 1 n.1.  As for Defendant's fainting episode, the Motion to Withdraw and the BOP medical records reveal that in response, Defendant was hydrated and prescribed ibuprofen.  Id. Finally, while Defendant complains of symptoms that may occur with COVID-19 infection, Defendant notes in his second pro se motion that he has been tested for COVID-19 on four separate occasions, with a negative result each time.  Second Pro Se Mot. Compassionate Release 3.

Furthermore, while there have previously been hundreds of active inmate cases of COVID-19 at FCI Elkton, as of today there is

one.  According to the Government, BOP has implemented rigorous procedures designed to mitigate the spread of the virus in its facilities and for now at least, those measures appear to be working at FCI Elkton.

Further, Defendant has nearly eight years left on his sentence for bank fraud and aggravated identity theft.  Defendant was convicted of a wide-ranging and sophisticated scheme of bank fraud and identity theft that resulted in a loss of more than $600,000 in less than two years.  Defendant was previously convicted of identity theft in state court and while on pretrial release on this case, Defendant's bond was revoked based on a new attempt to commit bank fraud where Defendant tried to purchase a luxury vehicle using falsified documents and another person's Social Security number.

Finally, Defendant has not proposed an adequate release plan. Based on Probation's Memorandum, Defendant's mother's home would not be a suitable residence for Defendant if he were to be released from custody and Defendant has not identified any alternative.

The Court, taking all the relevant facts into account, finds that

Defendant has not established that there exist extraordinary and compelling reasons warranting a reduction in his term of imprisonment.

### III. CONCLUSION

For the reasons set forth above:

(1)   Defendant Keith JD Offord's Second Amended Motion for Compassionate Release (d/e 126) is DENIED;

(2)   Defendant's Second Pro Se Motion for Compassionate Release (d/e 125) is DENIED;

(3)   Defendant's appointed counsel's Motion to Withdraw as Counsel and Motion for Leave to File Document Under Seal (d/e 129) is GRANTED.  Assistant Federal Public Defender Rosana Brown is terminated as counsel for Defendant.  For good cause shown, the BOP medical records filed under seal at d/e 130 shall remained SEALED; and,

(4)   The Government's Motion for Leave to File Under Seal (d/e 131) is GRANTED.  For good cause shown, the Government's Second Response in Opposition to Defendant's Amended Motion for Compassionate Release

(d/e 132), and the exhibits attached thereto, shall remain

SEALED.


ENTER:  September 24, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE